UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KATHY LANDIS, on behalf of herself and all others similarly situated,<br><br>                   Plaintiffs,<br>v.<br><br>THE ELEVANCE HEALTH COMPANIES, INC. f/k/a THE ANTHEM COMPANIES, INC. and AMERIGROUP CORPORATION,<br><br>                   Defendants. | Case No.<br><br>**COLLECTIVE ACTION COMPLAINT** |

**PRELIMINARY STATEMENT**

1. This is a collective action brought by individual and representative Plaintiff Kathy Landis ("Plaintiff"), on behalf of herself and all others similarly situated (the "putative FLSA Collective"), to recover overtime pay from The Elevance Health Companies, Inc. f/k/a The Anthem Companies, Inc. ("Elevance"), and Amerigroup Corporation (collectively, "Defendants").

2. Plaintiff brings this action on behalf of herself and all similarly situated individuals for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

3. Plaintiff's claim is asserted as a state-wide collective action under the FLSA, 29 U.S.C. § 216(b).

4. The putative "FLSA Collective" is made up of all persons who are or have been employed by Defendants in North Carolina as Medical Management Nurses, Utilization Management Nurses, Utilization Managers, Utilization Review Nurses, or other similar positions who were paid a salary and treated as exempt from overtime laws, and whose primary job was to perform medical necessity reviews during the applicable statutory period.

1

5. Plaintiff and those similarly situated routinely work more than forty (40) hours in a workweek but are not paid an overtime premium for their overtime hours.

6. As a result of Defendants' willful and illegal pay practices, Plaintiff and those similarly situated were deprived of overtime compensation for their hours worked in violation of federal law.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 to hear this Complaint and to adjudicate these claims because this action is brought under the FLSA.

8. Venue is proper in the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

9. The Anthem Companies, Inc. is a foreign limited liability company with its principal place of business located at 220 Virginia Ave., Indianapolis, Indiana, 46204, United States.

10. The Anthem Companies, Inc. is a wholly owned subsidiary of ATH Holding Company, LLC, which is a wholly owned subsidiary of Anthem, Inc., a publicly held corporation.

11. On or about June 28, 2022, Anthem, Inc. rebranded itself as Elevance Health, Inc. As part of this rebranding, The Anthem Companies, Inc. rebranded itself as The Elevance Health Companies, Inc.

12. Elevance Health, Inc. f/k/a Anthem, Inc. ("Elevance") is a multi-line health insurance company that provides managed care programs and related services.

13. Anthem, Inc. has at least 171 subsidiaries, including 60 regulated insurance companies, that employ thousands of individuals in various jobs to provide a broad suite of insurance products and services.

14. Anthem, Inc. organizes those various companies into three divisions: the Government Business Division (GBD), the Federal Employees Program (FEP), and the Commercial and Specialty Business Division (CSBD). Within those divisions, companies' operations are divided geographically into the East, Central, or West region.

15. According to its website, Anthem, Inc. and its subsidiaries provide healthcare benefits to more than 118 million members nationwide.

16. Anthem, Inc. and its subsidiaries operate in interstate commerce by, among other things, offering and selling a wide array of insurance products and services to customers and consumers in multiple states across the country, including but not limited to, preferred provider organizations, consumer-driven health plans, traditional indemnity, health maintenance organizations, point-of-service, ACA public exchange and off-exchange products, administrative services, Bluecard, Medicare plans, individual plans, Medicaid plans and other state-sponsored programs, pharmacy products, life insurance, disability products, radiology benefit management, personal health care guidance, dental, vision services and products.

17. Anthem, Inc. subsidiaries enter into a master administrative services agreement to use the same back-office operations for various functions. Those include payroll, human resources, and legal services.

18. Defendant Amerigroup Corporation ("Amerigroup") is a Delaware corporation with its principal place of business located at 4425 Corporation Ln., Virginia Beach, VA, 23462-3103, United States.

19. Amerigroup is a managed care organization.

20. Amerigroup contracts with the state of North Carolina to manage the Healthy Blue plan.

21. Anthem, Inc. acquired Amerigroup in approximately July 2012.

22. Amerigroup has been a subsidiary of Anthem, Inc. since the acquisition.

23. Elevance provides support to other subsidiaries of Anthem, Inc. and Amerigroup, in areas including finance, tax, payroll, and human resources.

24. Anthem, Inc. operates office locations in multiple states around the country, including in North Carolina.

25. Plaintiff Kathy Landis is an adult resident of Craven County, North Carolina.

26. Defendants employed Plaintiff as a Medical Management Nurse I from approximately April 2021 to June 2022, where she worked remotely from her home in Craven County, North Carolina.

27. Plaintiff and other similarly situated individuals performed or perform utilization reviews for enrollees in North Carolina's Medicaid program, Healthy Blue.

28. Elevance and Amerigroup jointly employed Plaintiff and other similarly situated individuals and are "employers" of Plaintiff and other similarly situated individuals within the meaning of the FLSA.

29. Elevance determines the rate and method of payment of Plaintiff and others similarly situated.

30. Plaintiff's paystubs list Anthem and its principal place of business address as her employer.

31. Upon information and belief, other similarly situated individuals' paystubs list Elevance and its principal place of business address as their employer.

32. Through their parent company, Elevance Health Inc. f/k/a Anthem, Inc., Defendants maintain data and personnel records on their employees, including the employees' names, employee ID, dates of employment, job title, job classification, work location, department, and supervisor.

33. Plaintiff and others similarly situated used both corporate-wide and subsidiary-specific software tools and systems in the course of their employment maintained by Defendants.

34. Plaintiff and others similarly situated had access to a single intranet site maintained by Anthem.

35. Plaintiff and others similarly situated had Anthem, Inc. and/or Amerigroup email addresses.

36. Defendants controlled Plaintiff's and the other similarly situated individuals' work by determining how to structure the medical necessity reviews Plaintiff and the similarly situated employees conducted.

37. Plaintiff and the other similarly situated individuals used medical policies, guidelines, and job aids published under the Elevance Health, Inc. f/k/a Anthem, Inc. and/or Amerigroup names when conducting medical necessity reviews.

38. When Plaintiff and other similarly situated individuals needed to escalate a medical authorization request for higher-level approval, they contacted a Medical Director, a doctor employed by Elevance.

5

39. Plaintiff and those similarly situated were supervised by managers employed by Elevance and/or Amerigroup.

40. Some supervisors of Plaintiff and those similarly situated had Elevance email addresses.

41. Other supervisors of Plaintiff and those similarly situated had Amerigroup email addresses.

42. Performance review forms completed by supervisors of Plaintiff and others similarly situated bore or bear the Elevance Health, Inc. f/k/a Anthem, Inc. name.

43. Upon information and belief, Elevance's gross annual sales made, or business done has been in excess of $500,000.00 at all relevant times.

44. At all relevant times, Defendants are, and have been, "employers" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203(d).

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

45. At all times relevant herein, Defendants operated a willful scheme to deprive Plaintiff and others similarly situated of overtime compensation.

46. Plaintiff and the similarly situated individuals work or worked as Medical Management Nurses, Utilization Management Nurses, Utilization Managers, Utilization Review Nurses, or in similar job titles, and were primarily responsible for performing medical necessity reviews for Defendants.

47. In conducting medical necessity reviews, Plaintiff and the other similarly situated individuals' primary job duty is non-exempt work consisting of reviewing medical authorization

6

requests submitted by healthcare providers against pre-determined guidelines and criteria for insurance coverage and payment purposes.

48. Within the past three years, Elevance employed licensed practical or licensed vocational nurses who were primarily responsible for conducting the same or similar type of medical necessity reviews as Plaintiff and/or the putative collective members.

49. When the criteria was met, the licensed practical or licensed vocational nurses were permitted to authorize insurance coverage.

50. Elevance paid the licensed practical and vocational nurses on an hourly basis and classified them as eligible for overtime pay.

51. Plaintiff and the similarly situated individuals are or were paid a salary with no overtime pay.

52. Plaintiff and the other similarly situated individuals are or were treated as exempt from overtime laws, including the FLSA.

53. Defendants suffered and permitted Plaintiff and the other similarly situated individuals to work more than forty (40) hours per week without overtime pay.

54. For example, in the workweek beginning August 9, 2021, Plaintiff estimates that she worked approximately forty-six (46) hours and did not receive overtime pay for her overtime hours.

55. Defendants have been aware, or should have been aware, that Plaintiff and the other similarly situated individuals performed non-exempt work that required payment of overtime compensation. Defendants also required Plaintiff and the similarly situated individuals to work long hours, including overtime hours, to complete all of their job responsibilities and meet Defendants' productivity standards.

7

Case 4:23-cv-00005-BO-KS    Document 1    Filed 01/17/23    Page 7 of 12

56. Defendants knew that Plaintiff and the other similarly situated individuals worked unpaid overtime hours because Plaintiff and others complained about their long hours, including the requirement to work weekends in order to keep up with their workloads. Specifically, when Plaintiff told her supervisor that she was working long hours, her supervisor responded that she was required to work as much as needed to complete her work, and there was nothing she could do because Plaintiff was salaried.

57. Although Defendants had a legal obligation to do so, Defendants did not make, keep, or preserve adequate or accurate records of the hours worked by Plaintiff and the other similarly situated individuals.

## FLSA COLLECTIVE ACTION ALLEGATIONS

58. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

59. Plaintiff brings Count I individually and on behalf of the putative FLSA Collective.

60. Plaintiff files this action on behalf of herself and all other similarly situated individuals. The putative FLSA Collective is defined as follows:

> All persons who worked as Medical Management Nurses, Utilization Management Nurses, Utilization Managers, Utilization Review Nurses, or in similar job titles who were paid a salary and treated as exempt from overtime laws and were primarily responsible for performing medical necessity reviews for Defendants in North Carolina at any time since three years prior to the filing of this Complaint through judgment.

61. Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached hereto as Exhibit A. As this case proceeds, it is likely that other individuals will file consent forms and join as "opt-in" plaintiffs.

62. During the applicable statutory period, Plaintiff and the other similarly situated individuals routinely worked in excess of forty (40) hours in a workweek without receiving overtime compensation for their overtime hours worked.

63. Defendants willfully engaged in a pattern of violating the FLSA, as described in this Complaint in ways including, but not limited to, requiring Plaintiff and the other similarly situated individuals to work excessive hours and failing to pay them overtime compensation.

64. Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the putative FLSA Collective. Accordingly, notice should be sent to the putative FLSA Collective. There are numerous similarly situated current and former employees of Defendants who have suffered from Defendants' practice of denying overtime pay, and who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through their records.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT
**FAILURE TO PAY OVERTIME**
**(On Behalf of Plaintiff and the Putative FLSA Collective)**

65. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

66. The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

67. Defendants suffered and permitted Plaintiff and the other similarly situated individuals to routinely work more than forty (40) hours in a workweek without overtime compensation.

68. Defendants' actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff and the other similarly situated individuals their required overtime compensation.

69. As the direct and proximate result of Defendants' unlawful conduct, Plaintiff and the other similarly situated individuals have suffered and will continue to suffer a loss of income and other damages. Plaintiff and the other similarly situated individuals are entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

70. By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the other similarly situated individuals, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

71. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendants knew or showed reckless disregard for the fact that their compensation practices were in violation of these laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the putative FLSA Collective, prays for judgment against Defendants as follows:

A. Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated, apprising them of the pendency of

this action and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

B. A finding that Plaintiff and the putative FLSA Collective are non-exempt employees entitled to protection under the FLSA;

C. A finding that Defendants violated the overtime provisions of the FLSA;

D. Judgment against Defendants in the amount of Plaintiff's and the putative FLSA Collective's unpaid back wages at the applicable overtime rates;

E. An award of all damages, liquidated damages, pre-judgment interest and post-judgment interest;

F. An award of attorneys' fees and costs incurred in prosecuting this action;

G. Leave to add additional plaintiffs and/or a North Carolina state law claim by stipulation or motion, the filing of written consent forms, or any other method approved by the Court; and

H. For such other and further relief, in the law or equity, as this Court may deem appropriate and just.

DATED: January 17, 2023        By:     s/Joshua M. Krasner
**BARRETT LAW OFFICES, PLLC**
William Barrett, NC Bar No. 19545
Joshua M. Krasner, NC Bar No. 19132
5 West Hargett St., Suite 910
Raleigh, NC 27601
Telephone: (919) 999-2799
wbarrett@barrettlawoffices.com
jkrasner@barrettlawoffices.com

**NICHOLS KASTER, PLLP**
Rachhana T. Srey, MN Bar No. 340133*
H. Clara Coleman, MN Bar No. 0401743*
4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
srey@nka.com
ccoleman@nka.com

*\* Pro hac vice application forthcoming*

**Attorneys for Plaintiff and the Putative FLSA Collective**