IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:23-CV-5-M-KS

KATHY LANDIS, on behalf of herself )
and all others similarly situated, )
 )
    Plaintiff, )
 )
    v. )           **ORDER and**
 )    **MEMORANDUM &**
 )    **RECOMMENDATION**
THE ELEVANCE HEALTH COMPANIES, )
INC., f/k/a THE ANTHEM COMPANIES, )
INC., and AMERIGROUP CORPORATION, )
 )
    Defendants. )

This case is before the court on the following motions:

        1.    Plaintiffs' motion to compel discovery [DE #106];

        2.    Defendants' Motion to Decertify the Conditionally Certified Collective [DE #110]; and

        3.    Plaintiffs' Rule 23 Motion for Class Certification [DE #122].

For the reasons stated below, Plaintiffs' motion to compel is granted in part and

denied in part, and it is recommended that Defendants' motion to decertify be denied

and Plaintiffs' motion for Rule 23 class certification be granted.

## I.  Factual Background

This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 *et seq.* ("NCWHA").  Plaintiffs are current or former utilization reviewers in the Nurse Medical Management ("NMM") job titles employed in North Carolina by The Elevance Health Companies ("Elevance") and Amerigroup Corporation ("Amerigroup") (collectively "Defendants"). (1st Am. Compl. [DE #59] ¶ 4.) Elevance is a multi-line health insurance company providing managed care programs and related services. (*Id.* ¶ 13.) Amerigroup is a subsidiary of Elevance, which "contracts with the state of North Carolina" to manage Healthy Blue, North Carolina's Medicaid plan. (Answer 1st Am. Compl. [DE #63] ¶ 21.)

This case involves the salaried utilization reviewer positions at Elevance—specifically the roles of NMM I, II, and Senior.[1] (Mem. Supp. Mot. Cert. Class [DE #123] at 6 n.9.) Plaintiffs' primary responsibility is utilization review, that is, determining whether healthcare services are medically necessary using objective criteria. (Mem. Supp. Mot. Cert. Class, Ex. 22 [DE #123-24] ("Pls.' Resp. Interrog.") at 3, 12, 21, 30, 39, 48; Pls.' Exhibits Regarding Mot. Cert. Class, Exs. 7, 8, 9 [DE ##124-3, 124-4, 124-5] ("NMM Job Descriptions").)

---

[1] Representative Plaintiff Landis worked as an NMM I in North Carolina from approximately April 2021 to June 2022. (First. Am. Compl. ¶ 27.) Opt-in Plaintiffs for the FLSA collective action are all employed with the NMM I or II job title. (*See* Mem. Supp. Mot. Cert. Class, Ex. 22 [DE #123-24] at 3, 12, 21, 30, 39, 48.)

2

Plaintiffs are or were salaried employees, meaning they have been classified as exempt from receiving overtime pay.[2] (1st Am. Compl. ¶ 52.) Plaintiffs allege they were misclassified as exempt, arguing they perform non-exempt work that requires payment of overtime compensation. (*Id.* ¶ 56.) Plaintiffs allege that they regularly worked more than forty hours per week and did not receive overtime pay. (*Id.* ¶¶ 54–55.) Plaintiffs seek damages in the form of unpaid back wages at the applicable overtime rates, as well as other relief. (*Id.* ¶¶ 1, 94.)

## II.   Procedural History

On December 20, 2023, the court granted Plaintiffs Landis' motion for collective action certification and conditionally certified a collective for purposes of the FLSA claim. (12/20/23 Order [DE #39].) On April 10, 2024, Plaintiff Landis and the opt-in Plaintiffs filed the first amended complaint, bringing an NCWHA claim individually and on behalf of a putative Rule 23 class. (*See* 1st Am. Compl.) Approximately six individuals have opted to join Plaintiff Landis in the FLSA action, and the proposed Rule 23 class is comprised of an estimated 113 members. (Mem. Supp. Mot. Class Cert. [DE #123] at 3, 16.)

Now that discovery has closed, Defendants move to decertify the conditionally certified FLSA collective [DE #110], and Plaintiffs move to certify the putative Rule 23 class [DE #122]. Plaintiffs also move to compel "late-disclosed documents

---

[2] On December 31, 2024, Defendants restructured the utilization reviewer role. It appears that at least some of the NMMs were reclassified as non-exempt as a result of the restructuring. (*See* 3/11/25 Jt. Status Report [DE #100] (noting the switch of some NMMs to hourly positions).)

improperly withheld based on purported privileges."[3] (Mem. Supp. Mot. Compel [DE #107] at 2.)

## DISCUSSION

### I. Motion to Compel

Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Relevance "has been broadly construed to encompass 'any possibility' that the information sought may be relevant to the claim or defense of any party." *EEOC v. Sheffield Fin., LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)); *see also Martin v. Bimbo Foods Bakeries*, 313 F.R.D. 1, 5 (E.D.N.C. 2016) (quoting *Sheffield Fin.*, 2007 WL 1726560, at *3); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-66, 2020 WL 2311668, at *2 (W.D. Va. May 8, 2020) (acknowledging the 2000 and 2015 amendments to Rule 26(b)(1) and concluding that the discovery rules are to be interpreted broadly); 8 Wright & Miller, Fed. Prac. & Proc. § 2008 (3d ed.) (summarizing history of Rule 26 and noting that the 2015 amendment "did not affect a dramatic change in the scope of discovery").

---

[3] The parties' cross motions for summary judgment are also pending. (Defs.' Mot. Summ. J. [DE #112]; Pls.' Mot. Partial Summ. J. [DE #116].)

4

Rule 26 requires the court to limit the frequency or extent of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or the discovery sought is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

"The party resisting discovery bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). "To meet this burden, the non-moving party 'must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law.'" *Johnson v. N.C. Dep't of Just.*, No. 5:16-CV-679-FL, 2018 WL 5831997, at *5 (E.D.N.C. Nov. 7, 2018) (quoting *Mainstreet Collection*, 270 F.R.D. at 241). "[T]he court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

Plaintiffs move to compel production of fifty-five documents identified by Defendants in a privilege log produced on March 11, 2025, and revised on April 1, 2025.[4] (Mem. Supp. Mot. Compel at 1–3.) The documents at issue concern a "financial analysis of reclassifying Nurse Medical Management nurses, the recent restructuring

---

[4] Though the privilege log identifies fifty-nine documents, Plaintiffs do not dispute that the documents in rows 9, 18, 22, and 39 of the privilege log fall under the attorney-client privilege. (Mem. Supp. Mot. Compel at 3 n.1.)

5

of NMM and Licensed Utilization Review nurse roles, and the switch of certain NMMs to other hourly positions." ( *Id.* at 3 (quoting 3/11/25 Jt. Status Report [DE #100]).) They include "synopses of ongoing litigation, compliance with applicable federal and state laws, and legal guidance on how leaders should respond to questions regarding Elevance's restructuring." (Resp. Opp'n Mot. Compel [DE #130] at 3.) The documents were not included in Defendants' November 4, 2024, response to Plaintiffs' document request, and a privilege log was not provided on November 4, 2024.[5] (Mem. Supp. Mot. Compel at 2.) The documents at issue fall into three groups: (1) forty-five PDFs, PowerPoint presentations, and Excel spreadsheets ("Business Documents"); (2) eight emails ("Email Communications"); and (3) two documents related to job descriptions and compensation ("Compensation Documents"). (*Id.* at 6–10.)

Plaintiffs argue (i) that Defendants forfeited any claimed privileges by failing to timely provide a privilege log, and (ii) the withheld documents do not qualify for the attorney-client privilege or attorney work-product protection. (Mem. Supp. Mot. Compel at 5–10.) Defendants respond that (i) they were not required to provide a privilege log for documents created after the start of litigation, and (ii) the documents at issue qualify for attorney-client privilege or work-product protection because they contain legal advice, legal correspondence, or the input and edits of counsel. (Resp.

---

[5] Defendants assert only that they withheld these documents based on attorney-client privilege and work-product protection, not as non-responsive to Plaintiffs' discovery requests. (Resp. Opp'n Mot. Compel at 2.) Defendants thus appear to concede the documents are responsive to the discovery requests.

Opp'n Mot. Compel at 5–14.) For the reasons below, Plaintiffs' motion to compel is granted in part and denied in part.

## A. Privilege Waiver

Plaintiffs argue Defendants failed to provide a sufficient privilege log, thus waiving any right to the claimed attorney-client privilege and work-product protection. (Mem. Supp. Mot. Compel at 5–6.) As to this issue, Rule 26(b)(5)(A) provides as follows:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> > (i) expressly make the claim; and
> >
> > (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(i)–(ii).[6] Failure to provide a privilege log with such notice "may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26 1993 advisory committee note. Waiver is only appropriate in cases where "unjustified delay, inexcusable conduct, or bad faith are present." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 235 (S.D.W. Va. 2015); *Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 248 (S.D.W. Va. 2014) (privilege waiver is an "extreme sanction").

---

[6] In cases involving both federal and state law claims, "the federal law of privilege applies." *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 286 n.3 (4th Cir. 2001).

7

Once litigation commences, "it can be assumed communications shift[] to legal strategy and documents [are] created because of the pending litigation." *SmartLinx Sols. v. Zeif*, No. 2:21-CV-711-BHH, 2022 WL 22888825, at *7 (D.S.C. Dec. 15, 2022). Though it is always a better practice for the parties to reach an agreement at the Rule 26 conference as to the handling of privileged material, courts have generally not required parties to include on a privilege log documents created after the start of the litigation. *See id.* (collecting cases).

Though this case was filed in January 2023, related litigation commenced on May 7, 2019, in the United States District Court for the Western District of Tennessee on behalf of plaintiffs in Tennessee and other states. *Canaday v. Anthem Cos.*, No. 1:19-CV-1084-STA-JAY, ECF No. 1 (W.D. Tenn. May 7, 2019). The court dismissed the out-of-state opt-in plaintiffs for lack of personal jurisdiction. *Canaday v. Anthem Cos.*, 439 F. Supp. 3d 1042, 1049 (W.D. Tenn. 2020), *aff'd*, 9 F.4th 392 (6th Cir. 2021). Cases were then filed in six other courts, including North Carolina, with Defendants represented by the same counsel in all of the cases.[7] The documents included on the privilege log were created after May 7, 2019. (*See* Coleman Decl. Mot. Compel, Ex. A [DE #108-1] ("Privilege Log").) The documents do not appear to be specific to the North Carolina litigation and, instead, relate to ongoing litigation across the country

---

[7] The other cases include *Lazaar v. Anthem Cos.*, No. 1:22-CV-3075-JGLC (S.D.N.Y.), *Kneppar v. Elevance Health Cos.*, No. 8:23-CV-863-MJM (D. Md.), *Baker v. Anthem Cos.*, No. 1:21-CV-4866 (N.D. Ga.), *Midkiff v. Anthem Cos.*, No. 3:22-CV-417-HEH (E.D. Va.), and *Learing v. Anthem Cos.*, No. 0:21-CV-2283-LMP-DJF (D. Minn.).

and the nationwide restructuring of Defendants' workforce. (*See* Privilege Log.) Given the date of creation and the extreme sanction of waiver, the court declines to find Defendants have waived their assertion of privilege by failing to supply a privilege log with their November 4, 2024, disclosure.

### B. Attorney-Client Privilege and Work Product Protection

The attorney-client privilege applies to "confidential communications between lawyer and client." *In re Grand Jury Subpoena*, 415 F.3d 333, 338 (4th Cir. 2005) (quoting *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir. 1998)). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). "In the corporate context, the company is the client and holds the corresponding attorney-client privilege." *Gibbs v. Stinson*, No. 3:18-CV-676, 2021 WL 4853575, at *7 (E.D. Va. Oct. 17, 2021). The privilege is construed narrowly. *In re Grand Jury Subpoena*, 415 F.3d at 338.

Whether the work-product doctrine applies "turn[s] on whether 'the primary motivating purpose behind the performance of the work was to assist in the pending or impending litigation.'" *U.S. Tobacco Coop., Inc. v. Certain Underwriters at Lloyd's*, No. 5:19-CV-430-BO, 2021 WL 1341360, at *11 (E.D.N.C. Apr. 9, 2021) (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 143 F.R.D. 611, 617 (E.D.N.C. 1992)).

A party claiming either attorney-client privilege or work-product protection bears the burden of establishing its application "with a specific demonstration of facts

supporting the requested protection, preferably through affidavits from knowledgeable persons." *U.S. Tobacco Coop.*, 2021 WL 1341360, at *11 (quoting *E.I. Du Pont de Nemours & Co. v. Kolon Indus. Inc.*, No. 3:09-CV-58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010)). A conclusory assertion is insufficient. *U.S. Tobacco Coop.*, 2021 WL 1341360, at *11. To meet its burden, a party must present "sufficient evidence . . . to establish the privilege [or protection] with respect to each disputed item." *Id.* (quoting *In re Miller*, 357 N.C. 316, 336, 584 S.E.2d 772, 787 (2003)).

### 1.    Business Documents

Plaintiffs argue that forty-five documents with business-related information do not fall within the attorney-client privilege because they contain business information, not legal advice. (Mem. Supp. Mot. Compel at 6–8.) Defendants respond that the documents include "FLSA-related legal advice" about Defendants' restructuring and, thus, fall within the attorney-client privilege. (Resp. Opp'n Mot. Compel at 9–10.)

The documents at issue here relate to the restructuring of the utilization reviewer positions. Such restructuring has implications for Defendants' business but also appears grounded in legal advice related to the FLSA. (*See, e.g.*, Privilege Log Row 10 (describing PowerPoint presentation as "detailing how leadership personnel should apply FLSA exemption status . . . for the purpose of conveying legal advice related to FLSA exemptions"); Resp. Opp'n Mot. Compel, Ex. A [DE #130-1] ("Smith Decl.") ¶ 10 ("These documents provide guidance on how Elevance leaders should lawfully communicate the restructuring and how they should advise senior leaders

10

and team leads on relevant laws, regulations, and pending lawsuits.").) Courts have found similar documents related to reclassification in FLSA cases to fall within the attorney-client privilege. *See Yerger v. Liberty Mut. Grp.*, No. 5:11-CV-238-D, 2012 WL 4424017, at *5–6 (E.D.N.C. Sept. 24, 2012) (attorney-client privilege applies to PowerPoint presentations related to reclassification of workers in FLSA case); *Deel v. Bank of Am., N.A.*, 227 F.R.D. 456, 460 (W.D. Va. 2005) (documents about how company "planned to address the issue of reclassification of some job codes based on the impending FLSA litigation" are privileged). Accordingly, the court finds Defendants have met their burden to show the forty-five Business Documents are privileged.

### 2. Email Communications

The second set of documents include email communications related to the restructuring of the utilization reviewer positions. (*See, e.g.*, Privilege Log Row 3, 23, 40.) Plaintiffs argue that the emails are not privileged because they were (i) sent by non-attorneys to non-attorneys, (ii) made for the purpose of sharing business—not legal—information, and (iii) sent to a wide range of managers. (Mem. Supp. Mot. Compel at 8–9.) Defendants contend the emails are privileged despite the fact that senders and recipients were non-attorneys because the emails include legal advice related to FLSA exemptions. (Resp. Opp'n Mot. Compel at 10–12.)

11

The fact that communications were sent between non-attorneys does not preclude a finding of attorney-client privilege.[8] *See Deel*, 227 F.R.D. at 460 (privilege is not waived because "non-lawyer employees send or receive communications"); *Yerger*, 2012 WL 4424017, at *5–6 (finding communications among non-attorneys related to reclassification of employees were privileged). While the information contained in the emails may be related to the business decision of restructuring, the emails also appear to contain legal advice related to FLSA exemptions. (*See, e.g.*, Privilege Log Row 40 ("Email communications with counsel . . . including information . . . detailing how leadership personnel should apply FLSA exemption status.").) The fact that the emails were sent to a small percentage of senior leadership does not operate to waive the privilege. *See In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-CV-2836-MD, 2020 WL 1593544, at *4 (E.D. Va. Feb. 6, 2020) ("The fact that [] information was conveyed to a relatively small group of non-lawyers acting for the company does not render it non-privileged.") (citing *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)). The court finds these eight documents fall within the attorney-client privilege.

3. Compensation Documents

The final two documents at issue are described as including "legal advice related to changes in various job descriptions." (Smith Decl. ¶ 12.) However, the privilege log and Defendants' response memorandum suggest the documents are

---

[8] In-house counsel was included on three of the eight emails at issue. (Privilege Log, Row 40, 45, 50.)

Excel spreadsheets that include compensation information related to the utilization reviewer role restructuring. (Privilege Log, Row 17, 20; Resp. Opp'n Mot. Compel at 8–9.) Given the inconsistencies in the description of these documents between Defendants' affidavit and Defendants' privilege log, the court does not have enough information to determine whether these documents are privileged or protected work product. Defendants shall submit the challenged privilege log entries 17 and 20 for *in camera* review so that the court may better ascertain the contents of these documents before determining whether they are privileged or protected. *See Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 604 (M.D.N.C. 1992) ("A district court has discretion in determining whether to conduct an *in camera* review of documents claimed to be privileged, protected or otherwise entitled to confidentiality.").

Accordingly, Plaintiffs' motion to compel is denied as to the Business Documents and Email Communications. Defendants shall submit the Compensation Documents (documents identified in Privilege Log Rows 17 and 20) for *in camera* review.

## II.  Motion to Decertify Conditionally Certified Collective

The FLSA permits employees to maintain an action for unpaid overtime against an employer on behalf of themselves and all others similarly situated. 29 U.S.C. § 216(b). Courts in the Fourth Circuit generally employ a two-step approach to determine whether prospective members are "similarly situated" in the FLSA context. *Jean-Francois v. Smithfield Foods, Inc.*, No. 7:22-CV-63-D, 2023 WL

13

4424068, at *3 (E.D.N.C. July 10, 2023) (collecting cases); (*see also* 12/20/23 Order at 2). The court first makes a preliminary determination whether to conditionally certify the class based upon a limited record before the court. The court assesses whether putative members are sufficiently similarly situated to permit "notice to putative collective action members of their right to opt in." *Vazquez-Aguilar v. Gasca*, 477 F. Supp. 3d 418, 421 (E.D.N.C. 2020); *see also Jean-Francois*, 2023 WL 4424068, at *3. The standard for conditional certification is fairly lenient and requires a preliminary factual showing that plaintiffs were "victims of a common policy or scheme or plan that violated the law." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 772 (D. Md. 2008); (*see* 12/20/23 Order at 3).

The second stage of class certification normally occurs after discovery is complete and is based upon a more developed factual record. *Jimenez-Orozco v. Baker Roofing Co.*, No. 5:05-CV-34-FL, 2007 WL 4568972, at *6 (E.D.N.C. Dec. 21, 2007); (*see* 12/20/23 Order at 3). At this stage, the court conducts a detailed review of the claims and defenses, weighing the following factors: (1) the factual and employment settings of the individual plaintiffs; (2) whether defendant has presented individualized defenses; and (3) fairness and procedural considerations. *See Hodge v. N.C. Dep't of Pub. Safety*, No. 5:19-CV-478-D, 2024 WL 499523, at *10 (E.D.N.C. Feb. 8, 2024). If the court finds that the plaintiffs are not similarly situated, the action is decertified and the opt-in plaintiffs are dismissed without prejudice, allowing the named plaintiffs to proceed on their individual claims. *See Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 706 (E.D.N.C. 2011).

14

On December 20, 2023, the court granted Plaintiff's motion for collective action certification and conditionally certified the following defined class for purposes of the FLSA claim:

> All persons who are or have been employed by Defendants in North Carolina as utilization review nurses in a Nurse Medical Management job title who were paid a salary and treated as exempt from overtime laws, and whose primary job was to perform utilization reviews during the applicable statutory period.

(12/20/2023 Order at 8.) Defendants now move to decertify the conditionally certified collective, arguing (i) Plaintiffs have significant variations in job duties; (ii) Defendants will put forth defenses requiring presentation of evidence about Plaintiffs' individualized duties and experiences; and (iii) fairness and procedural considerations require decertification because there will be a need for "mini-trials" on the job duties of each Plaintiff. (Mem. Supp. Mot. Decert. [DE #111] at 9–21.) Plaintiffs respond that (i) they share similar factual and employment settings as it relates to the exemption analysis; (ii) Defendants' exemption defenses may be decided collectively through common evidence; and (iii) consolidation is fair and consistent with the goals of the FLSA. (Resp. Opp'n Mot. Decert. [DE #134] at 10–20.) For the reasons below, the court recommends Defendants' motion to decertify be denied.

## A.    Factual and Employment Settings

The first factor of the decertification analysis "requires both an analysis of plaintiffs' job duties, geographic location, supervision, and salary" as well as evidence of Defendants' policy that violates the FLSA. *LaFleur v. Dollar Tree Stores, Inc*, 30 F. Supp. 3d 463, 469 (E.D. Va. 2014). Neither party contests that Defendants have a

policy of classifying Plaintiffs as exempt from overtime pay (App. Stmt. Facts, Pls.' Mot. Partial Summ. J, Ex. 1 [DE #119-1] ("Smith Dep. Tr.") at 38; Answer 1st Am. Compl. [DE #63] ¶ 5), a practice that could violate the FLSA if Plaintiffs were misclassified as exempt. Defendants instead argue there are substantial differences in the day-to-day work experiences of the opt-in Plaintiffs. Defendants emphasize that Plaintiffs work on different teams, have different duties, and conduct different types of utilization review using different guidelines. (Mem. Supp. Mot. Decert. at 10–17.) However, these differences are not significant to the question of Plaintiffs' exempt status, and any differences are outweighed by the similarities between Plaintiffs. *See Learing v. Anthem Cos.*, 722 F. Supp. 3d 929, 937–38 (D. Minn. 2024).

Plaintiffs are or were employed by Defendants in the NMM job title. (Pls.' Resp. Interrog. at 12, 21, 30, 39, 48.) Defendants' job descriptions for NMM I, II, and Senior share a similar description of the primary duties for each respective role. (*See* NMM Job Descriptions.) Individuals with the NMM job title use the same software systems to conduct utilization review. (App. Stmt. Facts, Pls.' Mot. Partial Summ. J., Ex. 2 [DE #119-2] ("Booth 30(b)(6) Dep. Tr.") at 26.) They report to Manager Is or IIs in a similar reporting structure (*id.* at 27) and are subject to the same performance improvement audits (*id.* at 46–47).

Plaintiffs spend the majority of their time performing utilization review. (Booth 30(b)(6) Dep. Tr. at 28–30, 99–100; Pls.' Resp. Interrog. at 12, 21, 30, 39, 48.) Though the type or complexity of claims may vary, the process for reviewing claims is fairly standardized. An NMM receives a claim, reviews the clinical documentation,

compares the clinical information to certain criteria, and either approves the claim if it meets the criteria or sends the claim to a medical director if it does not meet the criteria.[9] (App. Stmt. Facts, Pls.' Mot. Partial Summ. J., Ex. 3 [DE #119-3] ("Booth Dep. Tr.") at 33–55 (outlining inpatient and outpatient review process).)

Defendants argue the difference in criteria used to conduct utilization reviews is significant because "different guidelines change the analysis" by Plaintiffs. (Mem. Supp. Mot. Decert. at 15.) However, the criteria used does not significantly change the role—each Plaintiff determines the appropriate criteria to use and applies it to the information submitted by the healthcare provider. (*Compare* Mem. Supp. Mot. Decert., Ex. 1 [DE #111-2] ("Lee Dep. Tr.") at 20, 24 (describing role using Milliman/MCG guidelines for inpatient team) *with* Mem. Supp. Mot. Decert., Ex. 3 [DE #111-4] ("Landis Dep. Tr.") at 126–28 (describing role on outpatient team; stating she did not use Milliman's guidelines).)

The commonalities in Plaintiffs' factual and employment settings outweigh any factual differences pointed out by Defendants. *See Butler v. DirectSAT USA,*

_____

[9] Reviews received by an NMM working on an inpatient team may be received to be processed after the services have been performed, while an NMM on the outpatient team may review the services before they are rendered. (Booth Dep. Tr. at 36–37.) Additionally, as part of the review, NMMs on the inpatient team discuss the case with a medical director. (*Id.* at 41.) Defendants also emphasize that some Plaintiffs participate in rounds, while others do not. (Mem. Supp. Mot. Decert. at 14.) Rounds are part of the utilization review process, as they assist in determining whether certain care should be authorized. (*See* App. Stmt. Facts, Defs.' Mot. Summ. J., Ex. 15 [DE #115-15] ("Shanas Dep. Tr.") at 124.) The court acknowledges these slight variations in process, but finds the distinctions to be minimal compared to the overarching similarities in the utilization review process. *See LaFleur*, 30 F. Supp. 3d at 468 (finding "insubstantial differences in job duties" are "not significant" to the similarly situated determination).

*LLC*, 47 F. Supp. 3d 300, 311 (D. Md. 2014) ("A collective action does not necessitate that there be no differences among class members." (quoting *LaFleur*, 30 F. Supp. 3d at 474)). Moreover, the factual differences asserted by Defendants "do not subvert the central question of whether [Plaintiffs'] primary job duty of conducting utilization review constitutes nonexempt work under the FLSA." *Learing*, 722 F. Supp. 3d at 937. As such, this factor weighs against decertifying the collective.

### B. Individualized Defenses

"The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298,300 (D. Md. 2007). The fact that an inquiry related to a certain defense "is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 3:12-CV-596-MOC-DSC, 2015 WL 1346125, at *17 (W.D.N.C. Mar. 24, 2015) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1263 (11th Cir. 2008)).

Defendants argue the learned professional exemption, the administrative exemption, and the combination exemption may apply to Plaintiffs.[10] (Mem. Supp.

---

[10] For the learned professional exemption to apply, three elements must be satisfied: "(1) [t]he employee must perform work requiring advanced knowledge; (2) [t]he advanced knowledge must be in a field of science or learning; and (3) [t]he advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a); *see also* N.C. Gen. Stat. § 95-25.14(b)(4) (North Carolina minimum wage and overtime laws do not apply to those exempt under the learned professional exemption as defined under the FLSA). The first element is defined as work "requiring the consistent exercise of discretion and judgment." 29 C.F.R. § 541.301(b).

Mot. Decert. at 17–19.) They argue further that, should the case proceed to trial, "individualized testimony" about each Plaintiffs' "day-to-day duties and experiences" will be necessary.[11] (*Id.* at 17.) However, as noted above, there are substantial commonalities in the job traits and day-to-day experiences of Plaintiffs. Defendants overstate the necessity for such individualized analyses of the defenses for each Plaintiff—instead, the "common structural aspects of the NMMs' employment are enough to decide their proper exemption status." *Learing*, 722 F. Supp. 3d at 938; *see also Midkiff v. Anthem Cos.,* No. 3:22-CV-417-HEH, 2025 WL 992693, at *7 (E.D. Va. Apr. 2, 2025) (finding judicial economy "is far better served" by the factfinder reviewing some individual evidence related to exemptions in "the confines of one trial where the overall facts about Defendants, the role of utilization reviewers, and the

---

The administrative exemption includes employees who "exercise[e] discretion on significant matters" and who have a primary duty that includes "'the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.'" *Morrison v. Cnty. of Fairfax*, 826 F.3d 758, 762 (4th Cir. 2016) (quoting 29 C.F.R. § 541.200(a)); *see also* N.C. Gen. Stat. § 95-25.14(b)(4) (North Carolina minimum wage and overtime laws do not apply to those exempt under the administrative exemption as defined under the FLSA).

The combination exemption may apply to "[e]mployees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees." 29 C.F.R. § 541.708.

[11] Despite arguing that individual facts are necessary to prove these defenses, Defendants have already lodged a number of defenses against Plaintiffs as a collective, including the learned professional exemption and the administrative exemption. (*See* Defs.' Mem. Supp. Mot. Summ. J. [DE #113] at 10–26); *see also Learing*, 722 F. Supp. 3d at 937 ("An inherent tension exists between [Defendants'] summary judgment argument—that all NMMs fit within either the administrative or learned professional overtime exemption—and its opposition to collective proceedings, citing differences in NMM subject areas and work settings.").

process of applying guideline criteria to medical records has already been established"). Accordingly, the individualized defenses factor also weighs against decertification of the collective.

### C.    Fairness and Procedural Concerns

To assess fairness and procedural concerns, courts consider "the primary objectives of allowance of a collective action under § 216(b), namely '(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity.'" *Rawls*, 244 F.R.D. at 302 (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000)).

Plaintiffs share a common issue—whether they were misclassified as exempt from overtime pay. Defendants' concern that "mini-trials" for each Plaintiff would be necessary is unpersuasive. (Mem. Supp. Mot. Decert. at 20.) While individualized evidence may be introduced in discrete instances, the commonalities between Plaintiffs discussed above suggest judicial efficiency would be best served by one trial in which collective evidence predominates.

Defendants also contend that "Plaintiffs have proposed no workable trial plan or model on which a jury could reliably determine liability or damages." (Mem. Supp. Mot. Decert. at 20.) However, Plaintiffs have put forth a plan outlining the testimony they intend to present at trial, as well as the possibility of calculating damages for Plaintiffs after trial, should liability be found. (Pl.'s Resp. Opp'n Mot. Decert. at 20–

23); *see LaFleur*, 30 F. Supp. 3d at 468 (individualized inquiry into damages does not negate certification of a collective action).

Accordingly, each of the three factors weigh against Defendants, and the court recommends the motion to decertify the conditionally certified collective be denied.

## III.   Motion to Certify Rule 23 Class

To be certified as a class action under Rule 23, an action must meet four threshold requirements: (1) the class must be so numerous that joinder of all members is impractical (numerosity requirement); (2) there must be questions of law or fact common to the class (commonality requirement); (3) the representative parties' claims must be typical of the claims of the class (typicality requirement); and (4) the representative parties must be able to fairly and adequately protect the interests of the class (adequacy-of-representation requirement). Fed. R. Civ. P. 23(a). The Fourth Circuit also imposes an "implicit threshold requirement that the members of a proposed class be readily identifiable," meaning the court can "identify the class members in reference to objective criteria." *Career Couns., Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024) (internal quotation marks omitted) (quoting *EQT Prod. Co v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). The action must also satisfy one of the requirements set forth in Rule 23(b). *See* Fed. R. Civ. P. 23(b)(1), (2), (3).

Plaintiffs move to certify the following Rule 23 class under the NCWHA:

All persons who are or have been employed by Defendants in North Carolina as utilization review nurses in a Nurse Medical Management I, II, [or] Senior job title who are/were paid a salary and treated as exempt from overtime laws, and whose primary job is/was to perform

21

utilization reviews at any time within the two years prior to the commencement of this action to the present.

(Mem. Supp. Mot. Cert. Class [DE #123] at 14.) Defendants do not dispute the numerosity, typicality, adequacy, or ascertainability requirements of the putative class. (*See* Resp. Opp'n Mot. Class Cert. [DE #140].) Instead, Defendants argue Plaintiffs cannot satisfy the commonality requirement under Rule 23(a). (*Id.* at 6–18.) Defendants further argue Plaintiffs do not meet the requirements of Rule 23(b)(3) because common issues do not predominate and the class action is not the superior method for resolving the claims. (*Id.* at 19–22.)

## A.    Rule 23(a) – Numerosity, Typicality, Adequacy, and Ascertainability

The court finds Plaintiffs meet the undisputed requirements of Rule 23(a). The 113-member class meets the numerosity requirement. *See Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 535 (E.D.N.C. 1995) ("[A] class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable.").

Regarding typicality, Plaintiff Landis and the non-representative members have a shared interest in prevailing on a similar legal claim—that Defendants allegedly violated the NCWHA by misclassifying Plaintiffs as exempt and failing to compensate them for overtime hours worked. *See In re Under Armour Secs. Litig.*, 631 F. Supp. 3d 285, 302 (D. Md. 2022) ("To establish typicality, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" (internal quotations omitted) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998))).

22

Rule 23(a)'s adequacy-of-representation requirement is also satisfied. Plaintiff Landis was employed as an NMM I in North Carolina. (1st Am. Compl. ¶ 27.) She has actively participated in this action, and her interests in the outcome of this litigation do not appear to be in conflict with or antagonistic to other class members. She is represented by Helen Coleman and Rachhana T Srey of Nichols Kaster PLLP, as well as by William P. Barrett and Joshua M. Krasner of the Barrett Law Offices, PLLC. These attorneys have considerable experience in handling class action wage and hour lawsuits and have zealously represented Plaintiffs throughout this action. (*See* Mem. Supp. Mot. Class Cert., Ex. 38 [DE #123-40]; *Id.*, Ex. 1 [DE #123-1] ¶ 10.)

Finally, members of the putative class are readily ascertainable based on objective criteria as they work or worked for Defendants in the NMM I, II, or Senior role in North Carolina within the relevant time period.

### B.     Rule 23(a) – Commonality

"Commonality exists when '[t]he central facts and applicable law at issue . . . are shared by all members of the proposed class.'" *Cuthie v. Fleet Reserve Ass'n.*, 743 F. Supp. 2d 486, 498 (D. Md. 2010) (quoting *Arrington v. Colleen, Inc.*, No. 1:00-CV-191-AMD, 2001 WL 34117734, at *2 (D. Md. Apr. 2, 2001)). This requirement "is not defeated by minor differences in the underlying facts of an individual case." *Cuthie*, 743 F. Supp. 2d at 499. Defendants argue that the differences in job duties, the use of different guidelines for utilization review, the differences in performance evaluation and training, and the differences in hours worked among Plaintiffs undermines certification. (Resp. Opp'n Mot. Class Cert. at 6–16.)

23

As discussed in connection with Defendants' motion to decertify the collective, the similarities across NMM roles predominate, and any dissimilarities in the day-to-day experiences of Plaintiffs do not impede answering the ultimate question of whether Plaintiffs qualify as exempt. Defendants' argument that the differences in hours worked "pervades both liability and damages" is unpersuasive. (Resp. Opp'n Mot. Class Cert. at 16.) The issue before the court is not liability, but whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). The putative class shares a common question: whether individuals in the NMM I, II, or Senior role whose primary job was to perform utilization reviews qualify as exempt from overtime. Moreover, differences in damages do not prevent a finding of commonality under Rule 23(a). *See Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 58 (E.D. Va. 2021). Accordingly, the court finds the putative class satisfies the commonality requirement, and, thus, the requirements of Rule 23(a).

### C.      Rule 23(b)(3) – Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This predominance requirement is more demanding than the commonality requirement of Rule 23(a). *See EQT Prod. Co.*, 764 F.3d at 366. "Common issues of law and fact have been held to predominate 'where the same evidence would resolve the question of liability for all class members.'" *Berber v. Hutchinson Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *8 (E.D.N.C. Aug. 14, 2018) (quoting *Beaulieu*

*v. EQ Indus. Servs., Inc.*, No. 5:06-CV-400-BR, 2009 WL 2208131, at *20 (E.D.N.C. July 22, 2009)).

Plaintiffs argue common issues predominate because "all putative class members share the same primary job duty, were subject to common standards, performed their jobs in substantially similar ways, and were all classified as exempt from overtime and not paid their regular rate for hours worked over 40 per week." (Mem. Supp. Mot. Class Cert. at 23.) Defendants respond that putative class members do not share common job titles or duties, and members sit on different teams and apply different guidelines. (Resp. Opp'n Mot. Cert. Class at 21.)

In this case, liability depends on whether Plaintiffs are exempt or nonexempt employees under the FLSA and NCWHA. The record reflects common evidence across the putative class will resolve this question. First, there is evidence of a common policy across the putative class, classifying NMMs as exempt from overtime pay. (Smith Dep. Tr. at 37; Answer 1st Am. Compl. ¶ 5.) Moreover, there is common evidence to assist a jury in deciding whether the learned professional, administrative, or combination exemption should apply. This includes evidence of Plaintiffs' primary job duty of utilization review and evidence related to the utilization review process. (*See* NMM Job Descriptions; Pls.' Resp. Interrog.; Booth Dep. Tr. at 33–55 (evidence describing outpatient and inpatient utilization review process).) The differences pointed out by Defendants do not predominate as they relate to the question at hand—whether Plaintiffs were properly classified as exempt.

### D.     Rule 23(b) – Superiority

Under Rule 23(b)(3), courts assess the following: (A) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (B) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (C) "the desirability or undesirability of concentrating the litigation of the claims in a particular forum"; and (D) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

Plaintiffs argue the factors outlined in Rule 23(b)(3) favor finding superiority. (Mem. Supp. Mot. Class Cert. at 23–24.) Defendants respond that the class action is not the superior method for this litigation because "such a low number of the putative class opted into the FLSA collective action." (Resp. Opp'n Mot. Class Cert. at 19.) Defendants also argue the need for individualized inquiries during trial raises manageability concerns. (*Id.* at 20.)

The court is not persuaded by Defendants' argument related to the number of opt-in plaintiffs. Defendants argue the class action would "force putative class members" to join an action they already declined when they chose not to opt into the FLSA collective action. (Resp. Opp'n Mot. Class Cert. at 19.) However, individuals may have chosen not to join the FLSA collective for many reasons. Thus, "the concern about including class members who do not really want to participate in the class deserves little weight in assessing whether a class action is superior." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008).

Defendants also overstate the need for individualized inquiries during trial. As discussed above, significant common evidence exists related to whether the putative class performed exempt or nonexempt work. As such, "conducting multiple individual trials rather than a class action would be repetitive and inefficient, given the uniformity of the central question across all NMM roles." *Learing*, 722 F. Supp. 3d at 942. The class action is thus the superior method for adjudicating Plaintiffs' claims. It is therefore recommended that Plaintiff's motion for Rule 23 class certification be granted and that Nichols Kaster, PLLP, and Barrett Law Office, PLLC, be appointed class counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel [DE #106] is GRANTED in part and DENIED in part. Defendants are ORDERED to submit, by **September 5, 2025**, the documents in Privilege Log Rows 17 and 20 for *in camera* review.

It is further RECOMMENDED that Defendants' motion to decertify the conditionally certified collective [DE #110] be DENIED, that Plaintiffs' motion for Rule 23 class certification [DE #122] be GRANTED, and that Nichols Kaster, PLLP, and Barrett Law Office, PLLC, be appointed Rule 23 class counsel.

IT IS DIRECTED that a copy of this Order and Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 5, 2025,** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 22nd day of August 2025.

KIMBERLY A. SWANK
United States Magistrate Judge